IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: |
| | ) | 1:15-CR-100 |
| ISMAIL SIRDAH, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ISMAIL SIRDAH'S SENTENCING MEMORANDUM**

COMES NOW the Defendant, Ismail Sirdah by and through the undersigned counsel and hereby requests this Court to sentence him to a non-custodial sentence for the reasons set forth in this Memorandum of Law.

## I.  BACKGROUND

### B.  The Offense Conduct

Mr. Sirdah owns and/or operated a number of businesses in Dekalb County. A zoning issue arose regarding one such business. Specifically, after he purchased Lulu Billiards, the county claimed that he could not operate as a nightclub with a dance floor as the new zoning ordinance precluded such activity unless he could show that it was "grandfathered" in. To be "grandfathered" and thus exempt from the new zoning requirements, he would have to show that the establishment previously had a dance floor and had been utilized as a night club.

Mr. Sirdah appealed the initial ruling that he could not operate with a dance floor and as nightclub to the Dekalb County zoning board. He met with many individuals. He hired counsel skilled in the area. He obtained sworn affidavits attesting to the verity of the facts necessary to establish that the establishment was "grandfathered." He was prepared.

Since the issue began, Mr. Sirdah had been discussing the matter with someone who was employed with Dekalb County and whom he considered a friend, advisor and confidant[1]. This individual told Mr. Sirdah he "had his back". Shortly before the hearing, this individuals appeared at one of Mr. Sirdah's establishment with two individuals from the Dekalb zoning board, one being Mr. Clark. It was made clear that in exchange for payment, these two individuals, would insure a reversal of the initial decision and he would win the appeal. No specific amount was discussed at that time but there was no doubt in Mr. Sirdah's mind that payment was required. He could only speculate what the result would be if he decided not to pay the 2 board members. Mr. Sirdah paid each of these individuals after the vote.

---

[1] This individual is identified in the PSR in the section describing Mr. Sirdah's proffer.

**C. Background and Character of Ismail Sirdah**

1. *General*

Mr. Sirdah was born in Amman Jordan. He immigrated to the United States in 1983 and became a U.S. Citizen in 1991. He attended the University of Toledo, in Ohio and graduated with a BS in mechanical engineering. During the years that followed graduation he was employed at various companies such as AT&T, Makita Tools and Wagner Communications before going into business for himself in 1994. At times, he held down a full time job and part time job.

In 1994, Mr. Sirdah decided to start a business in the food and entertainment industry. After its success, he opened many more in the same industry and was successful for 15 years. Within the last six hears, since 2009, he gradually began to sell all of his businesses. He concurrently consults and helps manage his wife's promotion and entertainment company.

Mr. Sirdah is one of 15 children. 12 of his siblings live in Jordan, 1 in Egypt and 1 in the United States. Mr. Sirdah has 6 children: 3 live overseas in Jordan. The younger 3 were born in the United States and live with Mr. Sirdah and his wife, their mother.

Mr. Sirdah is very giving and supportive of his family. As a father should, he supports his minor children in Jordan. He also provides assistance and support to his older daughter given the economy and difficulty for her husband to obtain

employment. He in essence supports them and the grandchildren. Mr. Sirdah also provides financial support to his sisters as they too cannot make ends meet. As explained by Mr. Sirdah's wife,

> …my husband also helps his family over seas in Jordan. Ismail has a daughter in high school; he sends child support to help with her school, expenses, and the home. She will be graduating high school in the summer 2016 and will start college in the fall of that year. He will then be helping pay for her college education. Because of the poor economic situation in Jordan, members of his family have lost their jobs and have been unemployed for a long period of time. My husband has another daughter with four grandchildren that he also helps financially because, she and her husband, have been unable to find employment. Ismail has also taken on the responsibility of financially supporting his sisters and their families because of similar situations. It would be devastating for these families, which depend on his financial support for survival, if he was not able to continue helping them….
>
> He has also helped my sister, 10 years ago, by taking custody of her two children for a year and a half, while my sister was in an abusive relationship. After, helping with financial support for legal fees, lawyers and required courses.

Letter of Laura Sirdah[2]

Mr. Sirdah is also a hands on father with his 3 minor children who live in the United States. He helps them with homework, supports their school teams and is wholly involved with their upbringing. (*See*, Letter of Laura Sirdah. *See* also letter of Virginia Rios). In fact, while on bond, most every request for travel by

---

[2] Letters to the Court from Mr. Sirdah, family and community are attached hereto as Exhibit "A".

Mr. Sirdah has been so he could travel to his son's soccer games. (See travel requests attached hereto as Exhibit E).

    2.    *Charitable contributions and community support*

Mr. Sirdah's generosity is not limited to family. As the letters and documents attached hereto reflect, he has a very big heart and does what he can for people and communities whenever he can.

> Recently I was diagnosed with breast cancer and Mr. Sirdah was an angel sent by heaven. Because of the Chemotherapy treatments, I was not able to continue working; however, Mr. Sirdah continued paying my salary just the same. He also gave me an additional contribution towards food for me and my twelve year old son. Without his help, I would have been completely devastated financially and unable to pay not even for my minimum living expenses while on treatment…. The help Mr. Sirdah provided for my son and me through my terminal sickness is not extraordinary but rather a true demonstration of his caring character. I know of several instances when he helped people who just like me, are in need. Mr. Sirdah is a person with a great heart who is involved with the well-being of his family, employees and his community.
>
>                                                          Letter of Virginia Rios

> I have been working for Mr. Ismail Sirdah since 1998 and I can attest that he is a very fair employer to everyone that works for him. I am grateful in particular because he and his wife helped me when I was at my most desperate time of my life. In 2004 I was married to a very abusive person who [was] physically abusive with me and our young children. Because of this, Mr. Ismail Sirdah and his wife took my 2 year old daughter and 6 weeks infant into their home and they took care of them as if they were their own.
>
>                                                          Letter of Carmen Zarate

>Having become familiar with Ismail's character as a customer, I discovered how much he values education and the teaching profession. In my capacity as an elementary school teacher, I have called on him for many different occasions.  In 2009. Our school was selected to receive a new playground but we had to raise a percentage of the money ourselves.  I immediately called upon Ismail and without any hesitancy, he provided contributions from three of his businesses which helped us quickly reach our goal…..
>
>                                    Letter of  Amy Taylor.

Mr. Sirdah has provided  much support for the community over the years through direct donations and allowing his establishments to be utilized for various events and donating portions of proceeds. He also donated a soccer field to the Kalonju Soccer Academy so that the children would have a place to play. Over the years, Mr. Sirdah has received numerous correspondence thanking him for his support and contributions.  Some of these thank you notes are attached hereto as Exhibit "B" attached hereto.

In May 2000, a Doraville police officer was killed in the line of duty.  This event was very troubling and Mr. Sirdah took it to heart.  In response, he provided $30,000 to be used by the City of Doraville as a reward.  (See Exhibit "C' attached hereto).  Mr. Sirdah also donates to various charities and individuals.  (See Exhibit "D" attached hereto).

**D. Degree of Remorse and Exceptional Acceptance of Responsibility**

    1. *Cooperation and Remorse*

Mr. Sirdah is deeply remorseful for his part in these events. He got caught in the corruption that had become Dekalb County government and chose the wrong path when navigating on behalf of his businesses. As he expressed in his letter to the Court (See Exhibit "A"),

> I realize how wrong I acted and did something that I shouldn't have done. There is no excuse for my actions except, I made a mistake and should not have done this. At the time, I felt I was in a "No Win" situation and it clouded my good judgment. I should have sought out help… I admit that I was wrong and I accept full responsibility for my actions.
>
>                                               Letter of Ismail Sirdah

Mr. Sirdah's degree of remorse is also exemplified by his cooperation. Mr. Sirdah's cooperation began relatively quickly. He met with the government and provided information of which they had no knowledge. In fact, this matter, the bribery of Mr. Clark and the other board member was first brought to their attention by Mr. Sirdah. What they asked of him he did and he pled to the charge as and when requested.

## II. MEMORANDUM OF LAW

A sentencing court is to sentence a defendant to a reasonable sentence. In order to be reasonable, a sentence must achieve the purposes of sentencing as stated in §3553(a). *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). The sentence must be "sufficient but not greater than necessary". A district court shall fashion a reasonable individualized sentence based on §3553(a) factors. *See, United States v. Gall*, 128 S.Ct. 586 (2007); *United States v. Williams*, 435 F.3d 1350, 1354 (11th Cir. 2006). The factors set forth in the statute are as follows:

**a)** Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed--

   **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   **(B)** to afford adequate deterrence to criminal conduct;

   **(C)** to protect the public from further crimes of the defendant; and

   **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for—

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines— (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and **(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement—

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

>   **(7)** the need to provide restitution to any victims of the offense.

The statute unequivocally requires the district court to consider each enumerated factor and purpose set forth in 18 U.S.C. §3553(a) in determining a reasonable individualized sentence. The court is no more free to ignore one of these provisions than it would be to ignore any other, or the statute altogether. *See*, *United States v. Ron Pair Enters, Inc.,* 489 U.S. 235, 241 (1989). *See also*, *Booker*, 543 U.S. at 304-05 (Scalia, J.D. dissenting in part) ("the statute provides no order of priority among [t]he factors . . .")

**A. Nature and Circumstances of the Offense**:

§3553(a)(1) directs the Court to look at the "nature and circumstances of the offense and the history and characteristics of the defendant." In regard to the nature and circumstances of the offense, it is a given that bribery is a serious offense. But in reviewing the circumstances of this offense, the Court may take into consideration the nature of Dekalb County government at the time. As expressed in Michael Bowers September 30, 2015 report,

> The government of DeKalb County has failed. To be sure, the overwhelming majority of county employees work hard each day to lawfully perform their duties, but they do so in spite of top managers and elected officials who fail to understand the proper role of government and who have little ability or desire to lead.

> Outside audits, management reviews and special investigations will not fix the problems with the governance of this county. Until reform-minded public officials, who have the courage to demand that change occur are elected, this dysfunction will continue to fester. And they must understand that the transformation starts with them.
>
> Mr. May stated that "Public cynicism continues to grow as the stench of corruption and distrust permeates our air." Assistant United States Attorney for the Northern District of Georgia Jeffrey Davis said "Corruption in DeKalb County is rampant, and its residents are frustrated and disheartened." District Attorney Robert James called a former administration a "sewer of corruption." We fully concur with each statement."

Mr. Sirdah's businesses required him to deal with the "sewer of corruption" and in navigating how best to resolve issues with the county, he chose poorly and unlawfully. But that he had to operate under these circumstances is a factor this Court may consider in regard to the circumstances of the offense.

B. <u>History and Characteristics of Ismail Sirdah</u>

Mr. Sirdah's background and character were discussed earlier in this Memorandum. His letter attached hereto as well as those and other documents from family, friends and the community speak to his background and character. It includes, but is not limited to the following: He has no criminal history. He supports his wife, children, siblings and grandchildren. He is charitable with others and goes out of his way to help those in need. He has come to the aid of struggling individuals time and again, asking nothing in return. Understanding the

wrong he has done, he has done everything in his power to right the wrong and turn his conduct around.

## C. Sufficient but not greater than necessary

Final punishment must be "sufficient but not greater than necessary to satisfy the purposes set forth in 18 U.S.C. 3553(a)(2)[3]. In making this determination, and as noted above, the Court is to consider all the factors set forth in 3553(a) when fashioning a reasonable sentence.

Many Courts have granted variances in bribery cases. *See, e.g. United States v. Thavaraja*, 740 F.3d 253, 260 (2d Cir. 2014) (132 month downward variance appropriate given defendant had no prior convictions and appeared to be a "person of substance and decency"); *United States v. Loman*, 597 Fed. Appx. 518, 524 (10th Cir. 2015) (Downward variance of 91 months was "sufficient under the totality of all of the circumstances, but certainly not more than necessary to comply with title 18, Section 3553(a)"); *United States v. Whiteagle*, 759 F.3d 734, 748 (7th Cir. 2014) (Defendant was responsible for a loss in the millions of dollars and obstructed justice by lying on the witness stand at trial. Even so, the Court found that a 115 month downward variance appropriate and reasonable under 3553(a)

---

[3] The purposes set forth in 3553(a)(2) are to reflect the seriousness of the offense, promote respect for the law, punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training.

factors); *United States v. Esquenazi*, 752 F.3d 912, 920 (11th Cir. 2014); *United States v. White*, 663 F.3d 1207, 1217 (11th Cir. 2011); *United States v. Patel*, 400 Fed. Appx. 426 (11th Cir. 2010). In fact, the most recent U.S. Sentencing Commission Preliminary Quarterly Data Report for the 4th quarter, published September, 2015 (the "USSC Report") (a copy of the USSC Report is attached hereto as Exhibit "F") evidences a finding by many Courts that a sentence below the guideline range sufficient but not greater than necessary and reasonable. According to the USSC Report, between October 1, 2014 and September 30, 2015, in 29.6 % of defendants charged with bribery were granted downward variances separate and apart from any 5K1.1 motion which may have been filed. (*See,* USSC Report, Table 3)[4].

As a general matter, and of note, the Eleventh Circuit has upheld sentences as reasonable (sufficient but not greater than necessary), which are below the established guideline range. Each case listed below was decided within the Eleventh Circuit. The number of months shown is the amount of the downward variance below the low end of the Guideline range; the parenthetical show the justifications for a more lenient sentence.

---

[4] Table 3 separates the below guideline sentence "with *Booker*" into 2 groups: Downward departure with Booker and Below Guideline range with Booker. Understandably the first category is quite small. For simplicity, the 2 are added together and treated as one herein.

| Downward Variance in Months | CASE |
|---|---|
| 18 | *Cancel-Velez,* 2015 WL 3651352,(11th Cir. June 15, 2015) (departure based on general consideration of 3553 factors) |
| 22 | *Whitehead*, 605 Fed. Appx. 888, 891 (11th Cir. 2015) (departure based on general consideration of 3553 factors. |
| 12 | *Rouhani*, 598 F. App'x 626, 631 (11th Cir. 2015) (Defendant did not appear to be a danger to the community or that the offense would be repeated. Also many people depended on Defendant in his business and personal life and had a history of trying to be a good citizen and doing good deeds.  This was granted despite the Court finding defendant did not testify truthfully). |
| 60 | *Aguayo*, 563 Fed. Appx. 727, 728-29 (11th Cir. 2014) (Defendant's young age, his lack of criminal history, his promising future, and his treatable mental health problems) |
| 72 | *Britt*, 576 F. App'x 959, 964 (11th Cir. 2014) (Defendant's lengthy military service). |
| 36 | *Beasley*, 562 Fed. Appx. 745, 750-51 (11th Cir. 2014) cert. denied, 135 S. Ct. 186, 190 L. Ed. 2d 145 (2014) (Defendant's difficult upbringing, disabilities, mental health issues, bullying he experienced, father's issues and negative influence and low risk of recidivism). |
| 112<br>67 | *Esquenazi*, 752 F.3d 912, 920 (11th Cir. 2014) (2 Defendants in a bribery case.  One received 112 month downward variance and the other a 67-month variance as sufficient and not greater than necessary). |
| 68 | *White*, 663 F.3d 1207, 1217 (11th Cir. 2011) (Bribery:  variance reasonable pursuant to 3553(a) factors. |
| 11 | *Patel*, 400 Fed. Appx. 426 (11th Cir. 2010) (Bribery and immigration fraud.  Reasonable sentence pursuant to 3553(a) factors including lack of criminal history, etc. ) |

| | |
|---|---|
| 128 | *Clay*, 483, F.3d 739 (11th Cir. 2007) (defendant's post offense rehabilitation was extraordinary and warranted a sentence 1/3 of that suggested by low end of applicable guideline) |
| 67-102 | *McBride*, 511 F.3d 1293 (11th Cir. 2007) (Defendant's childhood history of abuse under 3553(a) was a legitimate factor for sentence well below guideline range) |
| 37 | *Gall*, 128 S.Ct. 586 (2007) (Defendant's post offense rehabilitative conduct). |
| 239 | *Lamb*, 2007 WL 117707 (Jan. 18, 2007) (defendant's employment, age at time of offense) |
| 120 | *Thompson*, 188 Fed, Appx. 902 (2006) (defendant's family background ) |
| 82 | *Becker*, 196 Fed. Appx. 762 (2006) (various § 3553(a) factors, and that the guideline sentence went beyond the 3553 sentencing objectives) |
| 79 | *Gray*, 453 F 1323 (2006) (defendant's age (64), lack of serious criminal record) |
| 60 | *Pitts*, 190 Fed. Appx. 852 (2006) (3553 (a) factors) |
| 52 | *Hill*, 176 Fed. Appx. 22 (2006) (defendant had been steadily employed, no previous conduct similar to the crime) |
| 33 | *Halsema*, 180 Fed. Appx. 103 (2006) (district court's explicit reliance on § 3553(a) factors) |
| 28 | *Hickman*, 175 Fed. Appx. 322 (2006) (various § 3553(a) factors considered) |
| 21 | *Mathis*, 186 Fed. Appx. 971 (2006) (commitment to public service, monetary amount involved, absence of prior conviction) |

| 16 | *Montgomery*, 165 Fed. Appx. 840 (2006) (no criminal history, history of mental illness, unlikely to commit further crimes) |

### III. CONCLUSION

In fashioning a sentence in this case, this Court must look at this Defendant individually and consider the factors set forth in 18 U.S.C. §3553 in determining a reasonable sentence for Ismail Sirdah.

Consideration of all §3553(a) factors favors the imposition of a non-custodial sentence in this case. For people like Mr. Sirdah and others who may engage in this conduct, a conviction in and of itself with the loss of the right to vote and reputation is a significant punishment and deterrence. A felony conviction with probation and house arrest, will reflect the seriousness of the offense, promote respect for the law, provide just punishment and afford adequate deterrence. It is sufficient but not greater than necessary to comply with the purposes set forth in §3553(a)(2).

Mr. Sirdah has no criminal history. There is little if any concern that he will re-offend. He has a history of good deeds and striving to help others. He is charitable and giving. He is a good husband, brother and father. He is remorseful and repentant. Many people rely on Mr. Sirdah and will be severely and

negatively impacted if he is sentenced to imprisonment. All of these considerations are appropriate when determining a reasonable sentence for Mr. Sirdah.

The Court does not need to worry that Mr. Sirdah may commit any further or other crimes. The disgrace he has suffered, the ordeal he has faced, the family he has placed in harms way, and his deep remorse are deterrents to him and others and significant punishments. In short, this Court does not need to be concerned with Ismail Sirdah ever again facing a judge in a criminal court.

As a result, Mr. Sirdah respectfully request that this Court grant him a downward variance and sentence him to a term of probation including house arrest and community service if the Court deems necessary.

Respectfully Submitted,

*Janice Singer-Capek*
JANICE SINGER-CAPEK
Georgia Bar No. 649033

Thompson Singer
3151 Maple Drive, N.E.
Atlanta, Georgia 30305
(404) 262-6277
e-mail jsinger@thompsonsinger.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing DEFENDANT ISMAIL SIRDAH'S SENTENCING MEMORANDUM was served upon counsel using the ECF system which will automatically send e-mail notification of such filing to all counsel or record in this matter.

This the 15TH day of January, 2016.

             *Janice Singer-Capek*
             JANICE SINGER-CAPEK, ESQUIRE
             COUNSEL FOR ISMAIL SIRDAH

3151 Maple Drive, N.E.
Atlanta, Georgia 30305
(404) 262-6277